SPRINGER-EUBANK CO. v. FOUR COUNTY ELECTRIC MEMBERSHIP CORP. 1999 NCBC 8

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION |
| COUNTY OF NEW HANOVER | 98-CVS-03194 |

SPRINGER-EUBANK COMPANY,
B.J. WILLIAMSON, INC.,
SMITH BROS. GAS CO., and
WALANE GAS COMPANY, INC.

        Plaintiffs

        v.

FOUR COUNTY ELECTRIC
MEMBERSHIP CORPORATION, and
FOUR COUNTY SERVICEPLUS,
INC.

        Defendants

**ORDER AND OPINION**

{1} **THIS MATTER** is before the Court on defendants' motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure. For reasons set forth below, it appears to the Court that the claims raised by the complaint have become moot and the defendants' motions should be **GRANTED**.

## FACTS

{2} Plaintiffs are four independent corporations organized pursuant to Chapter 55 of the North Carolina General Statutes. Plaintiffs engage in the business of the distribution of propane gas and related goods and services to persons and entities in southeastern North Carolina.

{3} Defendant Four County Electric Membership Corporation (Four County) is a non-profit corporation organized under Article 2, Chapter 117 of the North Carolina General Statutes (an "EMC"). Pursuant to the special powers granted by Chapter 117, Four County distributes electric power to thousands of customers in southeastern North Carolina.

{4} Defendant Four County ServicePlus, Inc. (ServicePlus) is a corporation organized pursuant to Chapter 55 of the North Carolina General Statutes. ServicePlus was a wholly owned subsidiary of Four County.

{5} Defendant Four County Propane, LLC (Propane, LLC) is a limited liability company, organized pursuant to Chapter 57C of the North Carolina General Statutes. Propane, LLC is the result of a joint venture originally entered into between ServicePlus and Jenkins Gas & Oil Co., Inc. ServicePlus and Jenkins Gas & Oil were each 50% owners of Propane, LLC.

{6} Plaintiffs allege that Four County engaged in a plan to acquire assets in order to enter the business of distributing propane gas in southeastern North Carolina. On September 3, 1998, plaintiffs filed this action seeking declaratory judgment and injunctive relief based on the claim that defendants' conduct was in violation of Article 2, Chapter 117 of the North Carolina General Statutes.

{7} In June, 1999, H.B. 476 was passed and signed into law amending Chapter 117 of the North Carolina General Statutes. As amended, Chapter 117 allows electric membership corporations (EMCs) to engage in

certain for-profit business activities.

{8} Between July 15 and 26, 1999, ServicePlus transferred to Four County its 50% interest in Propane, LLC in exchange for 40,000 shares of ServicePlus stock. As a result, the current owners of Propane, LLC are Four County (50%) and Jenkins Gas & Oil (50%).

## CONCLUSIONS OF LAW

{9} A court must have subject matter jurisdiction in order to exercise judicial authority over any case or controversy. *Shell Island Homeowners Ass'n., Inc. v. Tomlinson*, ___ N.C. App. ___, ___, 517 S.E.2d 401, 403-04 (1999). A motion to dismiss for lack of subject matter jurisdiction is properly granted where the issues before the court become moot. *Id.* The defendants assert that the recently enacted H.B. 476 renders the plaintiffs' claims moot and therefore stands as a complete bar to the plaintiffs' recovery.

{10} Article 2 of Chapter 117 of the North Carolina General Statutes authorizes the formation of nonprofit organizations "for the purpose of promoting and encouraging the fullest possible use of electric energy in the rural section of the State by making electric energy available to inhabitants of the State at the lowest cost." N.C.G.S. § 117-10.

{11} Prior to its amendment in 1999, a serious question existed with respect to whether or not Chapter 117 permitted EMCs to engage in any activity unrelated to the provision of electrical energy. The underlying policy issue with respect to the extent of the powers and authority of EMCs to conduct other business was quintessentially a policy question for the Legislature.

{12} The difficulty facing EMCs in 1999 was the threat of deregulation. EMCs were formed to provide low cost electricity to rural areas that might not otherwise be serviced. Deregulation poses the spectre of larger, more efficient energy companies actually being able to sell power to rural customers at a rate cheaper than the EMCs. EMCs are thus threatened with extinction unless they can meet the reduced rate offered in the competitive environment of deregulation. One way in which they can help themselves is by owning other business interests that generate profits which can then be used to subsidize the cost of electric power to EMC customers.

{13} As amended, Chapter 117 permits EMCs to "form, organize, acquire, hold, dispose of, and operate any interest up to and including full controlling interest in separate business entities that provide energy services and products" subject to specific conditions. N.C.G.S. § 117-18.1(a). In addition, while the amended statute provides that "[a]n electric membership corporation may not form or organize a separate business entity to engage in activities involving the distribution, storage, or sale of oil, as defined in G.S. 143-215.77(8)," the statute does allow an EMC to "acquire, hold, dispose of, and operate an interest in an *existing* business entity already engaged in these activities." N.C.G.S. § 117-18.1(b) (emphasis added).

{14} In amending Chapter 117 in 1999, the Legislature evidenced a policy decision to permit EMCs to invest in existing business entities which engage in activities involving the distribution, storage or sale of oil products and not to permit EMCs to start such new businesses on their own. There are at least two interpretations of the statute which support a finding that Four County's current ownership of fifty percent of Propane, LLC is an authorized exercise of its corporate powers under Chapter 117 as amended. First, Four County's "acquisition" of ownership interest in Propane, LLC (an existing business entity already engaged in an authorized activity) in July 1999 would be allowable under an interpretation of N.C.G.S. § 117-18.1(b). Second, the same statute could be interpreted to allow "holding" an interest in an existing business entity, thus permitting Four County's continuing to own indirectly an interest in Propane, LLC through ServicePlus. Even if it were determined that the original transaction was not within Four County's statutorily granted powers, the language used with respect to "holding" in the statute would seem to permit the continued ownership. That is logical. It would be illogical to hold that Four County could not continue to hold an interest, which the amendment now permits it to acquire, just because such interest was acquired prior to the amendment.

{15} The language of the amended statute makes clear that Four County's current ownership interest in Propane, LLC is proper. The July 1999 transaction between ServicePlus and Four County, whereby Four County received ServicePlus' interest in Propane, LLC in exchange for 40,000 shares of ServicePlus stock, resulted in Four County acquiring an ownership interest in an already existing propane business in compliance with Section 117-18.1(b) of the North Carolina General Statutes.

{16} The purpose of Chapter 117 is to ensure that low cost power is provided to rural areas of North Carolina. In order for EMCs to be economically viable in the deregulated environment, it will be necessary for them to subsidize their electricity business. In amending Chapter 117, the Legislature evidenced its intent to grant EMCs limited authority to invest in separate business entities that provide energy products and services that may help subsidize their electric business. Four County's actions fall within that limited authority.

{17} To find that the statute prohibits EMCs such as Four County from acquiring an interest in a propane business through a transaction involving a subsidiary would also be contrary to the policy expressed by the Legislature in amending the statute.

{18} The relief prayed for in plaintiffs' complaint is limited to a permanent injunction based upon a finding that defendants' actions are in violation of Chapter 117.

## CONCLUSION

{19} The amendment to Chapter 117 of the North Carolina General Statutes resolves the conflict between the parties in this case. "Whenever during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain an action merely to determine abstract propositions of law." *Simeon v. Hardin*, 339 N.C. 358, 370, 451 S.E.2d 858, 866 (1994) (citing *In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978)). "If the issues before the court become moot at any time during the course of the proceedings, the usual response is to dismiss the action." *Id.* "The issue of **mootness** is not determined solely by examining facts in existence at the commencement of the action." *North Carolina Press Ass'n, Inc. v. Spangler*, 87 N.C. App. 169, 170-71, 360 S.E.2d 138, 139 (1987) (citing *Peoples*, 296 N.C. at 147-48, 250 S.E.2d at 912)).

{20} Four County's ownership of an interest in Propane, LLC is consistent with Chapter 117 of the North Carolina General Statutes as amended by H.B. 476. Therefore, permanent injunctive relief is not available to plaintiffs. Because plaintiffs' complaint sought no relief other than a declaratory judgment finding defendants in violation of Chapter 117 and a permanent injunction, the claims in this case have become moot. Accordingly, plaintiffs' claims should be dismissed.

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that Defendants' Motion to Dismiss is **GRANTED**. Each party shall bear its own costs.

This the 13th day of October, 1999.